**UNITED STATES DISTRICT COURT**
**DISTRICT OF DELAWARE**

| | |
|---|---|
| PAUL PARSHALL, Individually and On Behalf of All Others Similarly Situated, | ) ) ) |
| Plaintiff, | ) Case No. _____ ) |
| v. | ) JURY TRIAL DEMANDED ) |
| OPUS BANK, PAUL G. GREIG, PAUL W. TAYLOR, MARSHA CAMERON, MELANIE S. CIBIK, MARK DEASON, MAL DURKEE, DAVID KING, MARY E. THIGPEN, RICHARD C. THOMAS, PACIFIC PREMIER BANCORP, INC., and PACIFIC PREMIER BANK, | ) CLASS ACTION ) ) ) ) ) ) ) ) |
| Defendants. | ) |

**COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934**

Plaintiff, by his undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

**NATURE OF THE ACTION**

1. This action stems from a proposed transaction announced on February 3, 2020 (the "Proposed Transaction"), pursuant to which Opus Bank ("Opus" or the "Company") will be acquired by Pacific Premier Bancorp, Inc. ("Pacific Premier"), a Delaware corporation, and Pacific Premier Bank.

2. On January 31, 2020, Opus's Board of Directors (the "Board" or "Individual Defendants") caused the Company to enter into an agreement and plan of merger (the "Merger Agreement") with Pacific Premier and Pacific Premier Bank. Pursuant to the terms of the Merger Agreement, shareholders of Opus will receive 0.90 shares of Pacific Premier common stock for

each share of Opus they own.

3. On April 6, 2020, defendants filed a Form S-4 Registration Statement (the "Registration Statement") with the United States Securities and Exchange Commission ("SEC") in connection with the Proposed Transaction, which scheduled a stockholder vote on the Proposed Transaction for May 5, 2020.

4. The Registration Statement omits material information with respect to the Proposed Transaction, which renders the Registration Statement false and misleading. Accordingly, plaintiff alleges herein that defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Registration Statement.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

6. This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper under 28 U.S.C. § 1391(b) because a portion of the transactions and wrongs complained of herein occurred in this District.

## PARTIES

8. Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of Opus common stock.

9. Defendant Opus is a California-chartered commercial bank and a party to the Merger Agreement. Opus's common stock is traded on the NASDAQ Global Select Market under the ticker symbol "OPB."

10. Defendant Paul G. Greig is Chairman of the Board of the Company.

11. Defendant Paul W. Taylor is Chief Executive Officer, President, and a director of the Company.

12. Defendant Marsha Cameron is a director of the Company.

13. Defendant Melanie S. Cibik is a director of the Company.

14. Defendant Mark Deason is a director of the Company.

15. Defendant Mal Durkee is a director of the Company.

16. Defendant David King is a director of the Company.

17. Defendant Mary E. Thigpen is a director of the Company.

18. Defendant Richard C. Thomas is a director of the Company.

19. The defendants identified in paragraphs 10 through 18 are collectively referred to herein as the "Individual Defendants."

20. Defendant Pacific Premier is a Delaware corporation and a party to the Merger Agreement.

21. Defendant Pacific Premier Bank is a California-chartered bank, a wholly-owned subsidiary of Pacific Premier, and a party to the Merger Agreement.

## CLASS ACTION ALLEGATIONS

22. Plaintiff brings this action as a class action on behalf of himself and the other public stockholders of Opus (the "Class"). Excluded from the Class are defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any defendant.

23.     This action is properly maintainable as a class action.

24.     The Class is so numerous that joinder of all members is impracticable. As of January 31, 2020, there were approximately 37,595,205 shares of Opus common stock outstanding, held by hundreds, if not thousands, of individuals and entities scattered throughout the country.

25.     Questions of law and fact are common to the Class, including, among others, whether defendants will irreparably harm plaintiff and the other members of the Class if defendants' conduct complained of herein continues.

26.     Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature. Plaintiff's claims are typical of the claims of the other members of the Class and plaintiff has the same interests as the other members of the Class. Accordingly, plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class.

27.     The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for defendants, or adjudications that would, as a practical matter, be dispositive of the interests of individual members of the Class who are not parties to the adjudications or would substantially impair or impede those non-party Class members' ability to protect their interests.

28.     Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class. Therefore, final injunctive relief on behalf of the Class is appropriate.

## SUBSTANTIVE ALLEGATIONS

**Background of the Company and the Proposed Transaction**

29. Opus provides commercial and retail banking products and solutions to its clients in western markets from its headquarters in Irvine, California and through forty-six banking offices, including twenty-eight in California, sixteen in the Seattle/Puget Sound region in Washington, one in the Phoenix metropolitan area of Arizona, and one in Portland, Oregon.

30. The Company offers a suite of treasury and cash management and depository solutions, and a wide range of loan products, including commercial, healthcare, media and entertainment, corporate finance, multifamily residential, commercial real estate, and structured finance, and is an SBA preferred lender.

31. The Company offers commercial escrow services and facilitates 1031 Exchange transactions through its Escrow and Exchange divisions.

32. Additionally, Opus's wholly-owned subsidiary, PENSCO Trust Company, has approximately $14 billion of custodial IRA assets and approximately 46,000 client accounts, which are comprised of self-directed investors, financial institutions, capital raisers, and financial advisors.

33. On January 31, 2020, the Individual Defendants caused the Company to enter into the Merger Agreement with Pacific Premier and Pacific Premier Bank.

34. Pursuant to the terms of the Merger Agreement, shareholders of Opus will receive 0.90 shares of Pacific Premier common stock for each share of Opus they own.

35. According to the press release announcing the Proposed Transaction:

Pacific Premier Bancorp, Inc. (NASDAQ: PPBI) (the "Company", "Pacific Premier", "we", "us" or "our"), the holding company of Pacific Premier Bank, and Opus Bank (NASDAQ: OPB) ("Opus") today announced they have entered into a definitive agreement under which Pacific Premier will acquire Opus in an all-stock

> transaction valued at approximately $1.0 billion, or $26.82 per share, based on a closing price for Pacific Premier's common stock of $29.80 as of January 31, 2020. Pacific Premier expects the transaction to be 14% accretive to EPS in 2021 with a 1.8 year earnback period to tangible book value per share based on anticipated cost savings of approximately 25%. . . .
>
> Transaction Details
>
> Under the terms of the definitive agreement, which was approved by the Board of Directors of both companies, holders of Opus common stock (including holders of Opus Series A preferred stock whose shares will be treated on an as-converted basis) will have the right to receive 0.90 shares of Pacific Premier common stock for each share of Opus common stock they own.
>
> Existing Pacific Premier shareholders will own approximately 63% of the outstanding shares of the combined company, and Opus shareholders are expected to own approximately 37%.
>
> The transaction is expected to close in the second quarter of 2020, subject to satisfaction of customary closing conditions, including regulatory approvals and shareholder approval from Pacific Premier and Opus shareholders. Opus directors who own shares of Opus common stock, executive officers and certain shareholders have entered into agreements with Pacific Premier pursuant to which they have committed to vote their shares of Opus common stock in favor of the acquisition. For additional information about the proposed acquisition of Opus, shareholders are encouraged to carefully read the definitive agreement, which will be filed with the Securities and Exchange Commission ("SEC").
>
> D.A. Davidson & Co. acted as financial advisor to Pacific Premier in the transaction and delivered a fairness opinion to the Board of Directors of Pacific Premier. Holland & Knight LLP served as legal counsel to Pacific Premier. Piper Sandler & Co. acted as financial advisor to Opus and delivered a fairness opinion to the Board of Directors of Opus. Sullivan & Cromwell LLP served as legal counsel to Opus.

36.     The Merger Agreement contains a "no solicitation" provision that prohibits the Individual Defendants from soliciting alternative proposals. Section 6.07(a) of the Merger Agreement provides, in relevant part:

> From the date of this Agreement through the Effective Time, neither Seller nor any of its Subsidiaries shall, and each of the foregoing shall cause their respective directors, officers or employees or any Representative retained by them not to, directly or indirectly through another Person, (i) solicit, initiate or knowingly encourage (including by way of furnishing information or assistance), or take any other action designed to facilitate or that is likely to result in, any inquiries or the

6

making of any proposal or offer that constitutes, or is reasonably likely to lead to, any Acquisition Proposal, (ii) provide any confidential information or data to any Person relating to any Acquisition Proposal, (iii) participate in any discussions or negotiations regarding any Acquisition Proposal, (iv) waive, terminate, modify or fail to enforce any provision of any contractual "standstill" or similar obligations of any Person other than Purchaser Parent or its Affiliates, (v) approve or recommend, propose to approve or recommend, or execute or enter into, any letter of intent, agreement in principle, merger agreement, asset purchase agreement or share exchange agreement, option agreement or other similar agreement related to any Acquisition Proposal or propose to do any of the foregoing, or (vi) make or authorize any statement, recommendation or solicitation in support of any Acquisition Proposal. . . .

37. Additionally, the Company must promptly advise Pacific Premier of any proposals or inquiries received from other parties. Section 6.07(b) of the Merger Agreement states: "In addition to the obligations of Seller set forth in this Section 6.07, Seller shall promptly (within 24 hours) advise Purchaser Parent orally and in writing of its receipt of any Acquisition Proposal."

38. Moreover, the Merger Agreement contains a restrictive "fiduciary out" provision permitting the Board to change its recommendation of the Proposed Transaction under extremely limited circumstances, and grants Pacific Premier a "matching right" with respect to any "Superior Proposal" made to the Company. Section 6.02(b) of the Merger Agreement provides:

Notwithstanding the foregoing, Seller and the Seller Board shall be permitted to effect a Change in Recommendation if and only if, following the receipt of an Acquisition Proposal:

(i) Seller shall have complied in all material respects with Section 6.07;

(ii) the Seller Board, after consulting with its outside counsel, shall have determined in good faith that failure to do so would be more likely than not to be inconsistent with the directors' fiduciary duties under applicable law;

(iii) the Seller Board shall have concluded in good faith, after giving effect to all the adjustments which may be offered by Purchaser Parent pursuant to clause (v) below, that such Acquisition Proposal constitutes a Superior Proposal;

(iv) Seller shall notify Purchaser Parent, at least five (5) Business Days in advance, of its intention to effect a Change in Recommendation in response to such Superior Proposal (including the identity of the party making such Acquisition Proposal) and

furnish to Purchaser Parent all the material terms and conditions of such proposal; and

(v) prior to effecting such a Change in Recommendation, Seller shall, and shall cause its financial and legal advisors to, during the period following Seller's delivery of the notice referred to in clause (iv) above, negotiate with Purchaser Parent in good faith for a period of up to five (5) Business Days (to the extent Purchaser Parent desires to negotiate) to make such adjustments in the terms and conditions of this Agreement so that such Acquisition Proposal ceases to constitute a Superior Proposal.

39. The Merger Agreement also provides for a "termination fee" of $38,658,859 payable by the Company to Pacific Premier if the Individual Defendants cause the Company to terminate the Merger Agreement.

**The Registration Statement Omits Material Information**

40. Defendants filed the Registration Statement with the SEC in connection with the Proposed Transaction.

41. As set forth below, the Registration Statement omits material information with respect to the Proposed Transaction.

42. First, the Registration Statement omits material information regarding Opus's and Pacific Premier's financial projections.

43. The Registration Statement fails to disclose the "earnings per share estimates for Opus for the years ending December 31, 2020 and December 31, 2021 . . . as well as [the] estimated long-term annual earnings per share and asset growth rates for the years ending December 31, 2022, December 31, 2023 and December 31, 2024, as confirmed by the senior management of Opus, and estimated dividends per share for the years ending December 31, 2020 through December 31, 2024, as provided by the senior management of Opus" to the Company's financial advisor, Piper Sandler & Co. ("Piper").

44. The Registration Statement also fails to disclose the "earnings per share estimates for Pacific Premier for the years ending December 31, 2020 and December 31, 2021 . . . as well as [the] estimated long-term annual earnings per share and asset growth rates for the years ending December 31, 2022, December 31, 2023 and December 31, 2024, as confirmed by the senior management of Pacific Premier, estimated dividends per share for the years ending December 31, 2020 through December 31, 2024, as provided by the senior management of Pacific Premier" to Piper.

45. The disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company, and allows stockholders to better understand the financial analyses performed by the company's financial advisor in support of its fairness opinion.

46. Second, the Registration Statement omits material information regarding the financial analyses performed by Piper.

47. With respect to Piper's Comparable Company Analyses, the Registration Statement fails to disclose the individual multiples and metrics for the companies observed by Piper in the analyses.

48. With respect to Piper's Analysis of Precedent Transactions, the Registration Statement fails to disclose the individual multiples and metrics for the transactions observed by Piper in the analysis.

49. With respect to Piper's Net Present Value Analysis of Opus, the Registration Statement fails to disclose: (i) the earnings per share estimates for Opus for the years ending December 31, 2020 and December 31, 2021; (ii) the estimated long-term annual earnings per share and asset growth rates for the years ending December 31, 2022, December 31, 2023, and

December 31, 2024; (iii) the estimated dividends per share for the years ending December 31, 2020 through December 31 2024; (iv) Piper's basis for applying price to the 2024 earnings multiples ranging from 12.0x to 17.0x and multiples of December 31, 2024 tangible book value ranging from 115% to 165%; (v) the individual inputs and assumptions underlying the discount rates ranging from 9.0% to 13.0%; and (vi) the terminal values of the Company.

50. With respect to Piper's Net Present Value Analysis of Pacific Premier, the Registration Statement fails to disclose: (i) the earnings per share estimates for Pacific Premier for the years ending December 31, 2020 and December 31, 2021; (ii) the estimated long-term annual earnings per share and asset growth rates for the years ending December 31, 2022, December 31, 2023, and December 31, 2024; (iii) the estimated dividends per share for the years ending December 31, 2020 through December 31, 2024; (iv) Piper's basis for applying price to the 2024 earnings multiples ranging from 12.0x to 17.0x and multiples of December 31, 2024 tangible book value ranging from 160% to 235%; (v) the individual inputs and assumptions underlying the discount rates ranging from 9.0% to 13.0%; and (vi) the terminal values of Pacific Premier.

51. With respect to Piper's Pro Forma Transaction Analysis, the Registration Statement fails to disclose: (i) the assumptions relating to transaction expenses, purchase accounting adjustments, and cost savings, and the adjustments for CECL accounting standards; (ii) the earnings per share estimates for each of Opus and Pacific Premier for the years ending December 31, 2020 and December 31, 2021; (iii) the estimated earnings per share growth rate for each of Opus and Pacific Premier for the years ending December 31, 2022 and December 31, 2023; (iv) the extent to which the Proposed Transaction could be accretive to Pacific Premier's estimated earnings per share in the years ending 2020 through 2023; and (v) the extent to which the Proposed Transaction could be dilutive to Pacific Premier's estimated tangible book value per share at close

and December 31, 2020 and December 31, 2021.

52. When a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

53. Third, the Registration Statement fails to disclose the exchange ratio proposed by Party A in February or March 2019.

54. The omission of the above-referenced material information renders the Registration Statement false and misleading, including, *inter alia*, the following sections of the Registration Statement: (i) Background of the Merger; (ii) Opus's Reasons for the Merger and Recommendation of Opus's Board of Directors; and (iii) Opinion of Opus's Financial Advisor.

55. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's stockholders.

## COUNT I

**Claim for Violation of Section 14(a) of the 1934 Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and Opus**

56. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

57. The Individual Defendants disseminated the false and misleading Registration Statement, which contained statements that, in violation of Section 14(a) of the 1934 Act and Rule 14a-9, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially false or misleading. Opus is liable as the issuer of these statements.

58. The Registration Statement was prepared, reviewed, and/or disseminated by the Individual Defendants. By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Registration

Statement.

59.     The Individual Defendants were at least negligent in filing the Registration Statement with these materially false and misleading statements.

60.     The omissions and false and misleading statements in the Registration Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction. In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Registration Statement and in other information reasonably available to stockholders.

61.     The Registration Statement is an essential link in causing plaintiff and the Company's stockholders to approve the Proposed Transaction.

62.     By reason of the foregoing, defendants violated Section 14(a) of the 1934 Act and Rule 14a-9 promulgated thereunder.

63.     Because of the false and misleading statements in the Registration Statement, plaintiff and the Class are threatened with irreparable harm.

## COUNT II

**Claim for Violation of Section 20(a) of the 1934 Act**
**Against the Individual Defendants, Pacific Premier, and Pacific Premier Bank**

64.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

65.     The Individual Defendants, Pacific Premier, and Pacific Premier Bank acted as controlling persons of Opus within the meaning of Section 20(a) of the 1934 Act as alleged herein. By virtue of their positions as officers and/or Board members of Opus and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Registration Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the

content and dissemination of the various statements that plaintiff contends are false and misleading.

66. Each of the Individual Defendants, Pacific Premier, and Pacific Premier Bank was provided with or had unlimited access to copies of the Registration Statement alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

67. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same. The Registration Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in the making of the Registration Statement.

68. Pacific Premier and Pacific Premier Bank also had supervisory control over the composition of the Registration Statement and the information disclosed therein, as well as the information that was omitted and/or misrepresented in the Registration Statement.

69. By virtue of the foregoing, the Individual Defendants, Pacific Premier, and Pacific Premier Bank violated Section 20(a) of the 1934 Act.

70. As set forth above, the Individual Defendants, Pacific Premier, and Pacific Premier Bank had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the 1934 Act and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the 1934 Act. As a direct and proximate result of defendants' conduct, plaintiff and the Class are threatened with irreparable harm.

**PRAYER FOR RELIEF**

**WHEREFORE**, plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C. Directing the Individual Defendants to disseminate a Registration Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D. Declaring that defendants violated Sections 14(a) and/or 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

E. Awarding plaintiff the costs of this action, including reasonable allowance for plaintiff's attorneys' and experts' fees; and

F. Granting such other and further relief as this Court may deem just and proper.

**JURY DEMAND**

Plaintiff hereby requests a trial by jury on all issues so triable.

Dated: April 21, 2020

**RIGRODSKY & LONG, P.A.**

By: */s/ Gina M. Serra*
Brian D. Long (#4347)
Gina M. Serra (#5387)
300 Delaware Avenue, Suite 1220
Wilmington, DE 19801
Telephone: (302) 295-5310
Facsimile: (302) 654-7530
Email: bdl@rl-legal.com
Email: gms@rl-legal.com

**OF COUNSEL:**

**RM LAW, P.C.**
Richard A. Maniskas
1055 Westlakes Drive, Suite 300
Berwyn, PA 19312
Telephone: (484) 324-6800
Facsimile: (484) 631-1305
Email: rm@maniskas.com

*Attorneys for Plaintiff*